IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CLAIRE ANN RESOP, Trustee,

        OPINION AND ORDER

    Appellant,

        3:07-cv-00369-bbc

  v.

FARMERS & MERCHANTS
STATE BANK,

    Appellee.

- - - - - - - - - - - - - - - - - - - - - -

In the Matter of:

DONNA M. McCLEARN,

    Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  Donna McClearn married Robert McCall, Jr. in 1996 and lived with him in a house in Lodi, Wisconsin, until 2001, when he moved out, with no intention of returning. The two were divorced in April 2003. Before then, they executed a written settlement agreement under which Call gave McClearn the Lodi residence and she agreed to make all the payments on it and hold him harmless. In March 2003, the two went to appellee Farmers &

1

Merchants State Bank for a closing on a mortgage McClearn had taken out on the house. Call executed a quit claim on the residence and McClearn signed the mortgage in her own name. About eighteen months later, she filed for bankruptcy.

The issue raised in this case is whether the bankruptcy trustee can avoid the mortgage to appellee F&M, using her "strong arm" powers under 11 U.S.C. § 544. Under these powers, a trustee has the authority to avoid any transfer of property by the debtor that would be voidable by a bona fide purchaser of real property. The trustee thinks the mortgage is voidable under Wisconsin law, specifically Wis. Stat. § 706.02(1)(f), a statute of frauds, which provides that transactions involving real property are not valid unless evidenced by a conveyance that is "signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead . . ."

The bankruptcy court agreed with the trustee's position that the mortgage is invalid, but then looked to a second statute, Wis. Stat. § 706.09(1)(e), to determine whether a bona fide purchaser would be able to take the property free of an adverse claim (such as one raised by a spouse who had not consented to a conveyance) in the situation before the court. He identified an apparent anomaly in § 706.9(1)(e), which governs recording and specifies the situations in which a conveyance is free of a prior adverse claim (subsection (1)) and when it is not (subsection (2)). The language of § 706.09(1)(e) does not track that of §

2

706.09(1)(f) in referring to any conveyance that alienates *any interest of a married person in a homestead,"* as one might expect. Instead, it applies to the *"homestead of the spouse of any transferor of an interest in real estate."* The bankruptcy court determined that the statutes should be read to cover the same interest, that of a married person in a homestead, and that such a reading would comport with the intentions of the drafters and would make the statutory scheme workable. Under this reading, a bona fide purchaser would be considered to have had notice of the mortgage because it was signed by a single person and it had not been recorded for five years and thus did not qualify as free from an adverse claim under § 706.09(1)(e).

Appellant Claire Ann Resop objects to the bankruptcy judge's determination, contending that the conveyance was invalid and should be set aside, with the proceeds going to the other creditors. The mortgagee, appellee F&M, agrees with the bankruptcy judge's resolution of the case but not with the way it reached its legal conclusion. I conclude that the conveyance was valid because Call had abandoned his homestead rights, leaving his wife free to convey her interest in the property. Accordingly, the bankruptcy judge's decision will be affirmed, although on different grounds from those on which he relied.

From the facts stipulated by the parties, I find that the following are material.

FACTS

For about four years after their marriage, debtor Donna M. McClearn and her husband Robert Call, Jr. lived together in a house in Lodi, Wisconsin. On April 17, 2001, Call moved out of the house. He had no intention of returning to the residence, did not consider it to be his homestead after he left and never resided in the house again. McClearn continued to live there and considered it to be her homestead. On May 17, 2002, she filed for divorce. At some time thereafter, she and Call agreed to a division of their assets and liabilities, which they memorialized in a settlement agreement signed on November 25, 2002. Under the settlement, McClearn was to keep in her own name the residence in which she was living, make all the payments due and hold Call harmless. Both parties agreed that each would have the right to dispose of his or her separate property as fully and effectively as if the parties had never been married.

Before the divorce was final and the settlement approved by the court, McClearn sought and received approval from appellee Farmers & Merchants State Bank for a mortgage loan on the Lodi residence. On March 19, 2003, she and Call were present at the bank for the loan closing. Call executed a quit claim deed, transferring his interest in the residence to McClearn, who then signed a $300,000 note and mortgage to appellee F&M. Call did not sign the new mortgage. Five weeks later, McClearn's and Call's divorce became final. About 18 months later, McClearn filed a petition for relief under chapter 7 of the United

4

States Bankruptcy Code.

Acting under the "strong arm" power that a trustee in bankruptcy has under 11 U.S.C. § 544(a)(3) to avoid certain liens that a hypothetical bona fide purchaser would be able to avoid under non-bankruptcy law, appellant trustee filed an adversary proceeding against appellee F&M on October 11, 2006. She sought to set aside the new mortgage as defective because it transferred McClearn's interest in her homestead but did not contain Call's signature. Appellee F&M opposed the effort to avoid the mortgage.

## BANKRUPTCY COURT DECISION

Relying on the parties' stipulated facts and exhibits, the bankruptcy court decided that the Wisconsin statute of frauds, Wis. Stat. § 706.02(1)(6), requires the joinder of both spouses whenever one wishes to convey *any* interest in a married couple's homestead. (Section 706.02(1)(f) says that a real estate transaction is not valid unless the conveyance is signed by both spouses if it alienates any interest of a married person in a homestead.) The bankruptcy court concluded that the statute applied to McClearn's conveyance of her interest in the homestead, that the mortgage signed by McClearn alienated her interest in her homestead and that the lack of Call's signature made the mortgage invalid. Although § 706.02(1)(f) recognizes the validity of the alienation of a homestead by one spouse if the other joins in the transaction by a separate conveyance, the bankruptcy judge found that the

5

quit claim deed signed by Call was neither a separate conveyance to the bank nor a ratification of McClearn's conveyance to the bank of her interest.

The bankruptcy court did not end its analysis at this point, but went on to decide whether the mortgage could be avoided by the trustee, whose strong arm powers provide her only the rights a bona fide purchaser would have.  It turned to Wis. Stat. § 706.09(1)(e), which is titled "Notice of conveyance from the record" and which sets out the conditions under which bona fide purchasers will take title free of adverse claims and the circumstances in which purchasers will be held to have notice of a prior outstanding claim or interest.  As it relates to interests in a homestead, the statute provides that a bona fide purchaser without notice will take a conveyed homestead interest free of an adverse claim on two conditions: (1) the recorded conveyance either shows that the person signing it is single, unmarried or widowed or fails to show the transferor's marital status; *and* (2) the conveyance has appeared of record for five years.  (The effect of this statute is that if the conveyance has not been challenged for five years, a bona fide purchaser need not worry about any adverse claim of title by an aggrieved spouse.)

The bankruptcy court characterized this requirement as odd.  Even if the conveyance stated that it was not a conveyance of marital property, a "diligent purchaser would need to look into the prior transferor's marital status and the use of the property." Mem. Dec., dkt. #8, at 5.  The requirement eliminated "the essence of [bona fide purchaser] protection,

6

which is supposed to allow prospective purchasers to rely on the chain of title that can be constructed from the public registry of deeds." Id. Odd as the provision seemed to it, however, the bankruptcy court concluded that it represented the legislature's considered judgment of how best to balance spouses' protections against the potential harm to a bona fide purchaser.

In applying § 706.09(1)(e), the bankruptcy judge found another oddity in the wording of the statute, which protects a bona fide purchaser from an adverse claim if the claim is dependent for its validity upon one of a number of enumerated circumstances, including the transferred property's being the "[h]omestead of *the spouse of any transferor of an interest in real estate.*" This language seemed to exclude the mortgage interest taken by appellee F&M because the validity of that mortgage did not turn on the mortgaged property's being the homestead of McClearn's spouse: it was McClearn's homestead interest that invalidated the mortgage under § 706.02(1)(f) and not Call's. Therefore, the court held, it could not find from the plain language of § 706.09(1)(e) that the statute applied to the mortgaged interest in McClearn's residence. (This point was critical. If the statute applied, no bona fide purchaser could have bought the mortgaged property free and clear of any adverse claim; § 706.09(1) says that such a purchaser buys a mortgaged interest free and clear only if she is "without notice"; a purchaser seeking to buy McClearn's mortgaged property as of 2005 would have had notice from the registry of deeds that the mortgagor was

7

"single" *and* that the mortgage had not been recorded for five years.).

In the bankruptcy court's view there was a way out of this particular oddity: § 706.09(1)(e) should be read as having been intended to refer to § 706.02(1)(f) and the two statutes construed to cover the same homestead interests. Under this view, § 706.09(1)(e), the recording statute, would be read as applying to "any interest of a married person in a homestead," rather than to "the homestead of the spouse of any transferor of an interest in real estate." The bankruptcy court believed that such a reading was consistent with the legislature's goal of harmonizing the two statutes with Wisconsin's Marital Property Act. Otherwise, in a situation in which both spouses intended the property to be the homestead and both signed the conveyance, a purchaser would have to look backward only five years to determine whether the title was marketable, whereas in a situation in which only one spouse intended the property to be her homestead, a purchaser would have to look back 30 years to determine marketability. Although the court did not say so explicitly, it was implicit in its conclusions that reading the statute to produce such a result would have an adverse effect on property transactions in general.

Reviewing the previous versions of the statutes, the bankruptcy judge concluded that when the legislature had amended the statutes, it had not intended to make any substantive changes but had wanted simply to make the statutes gender neutral and harmonize them with Wisconsin's Marital Property Act. Thus, it would be proper to construe them as having

8

the same effect, so that a conveyance would fall within the scope of Wis. Stat. § 706.09(1) if the conveyance's validity turned on the property's being the homestead of both spouses or either one.  So construed, § 706.09(1)(e) would apply to appellee F&M's mortgage.

The bankruptcy judge's conclusion led to his determination that as of the petition date, a bona fide purchaser would have been charged with notice of the mortgage because it had not yet appeared of record for five years.  Because the bankruptcy trustee has only the rights of a bona fide purchaser and such a purchaser would have no right to take an interest in McClearn's residence free and clear of any adverse interest within the first five years after the invalid mortgage was filed, appellee trustee had no right to have appellee F&M's mortgage set aside for the benefit of the creditors.

The bankruptcy judge did not discuss the trustee's claim that she had additional strong arm powers under subsections (1) and (2) of 11 U.S.C. § 544(a) to step into the shoes of McClearn's creditors.  He entered judgment for appellee F&M.  Appellant trustee then filed this appeal.

## OPINION

Both parties take issue with the bankruptcy judge's decision. Appellant trustee argues that it is irrelevant whether a bona fide purchaser would have had notice of appellee's mortgage; the bankruptcy court should have stopped with its determination that the

9

mortgage was an invalid conveyance. Appellee F&M agrees that the bankruptcy judge need not have gone beyond his analysis of the validity of the mortgage but it contends that he should have found the mortgage valid. In reviewing the judge's decision, I will use the de novo standard, because the only issues are ones of law.

As the parties do, I will begin with the question of the mortgage's validity under Wis. Stat. § 706.02(1)(f). Both the bankruptcy court and appellant trustee read the statute as invalidating any transfer of an interest in property "if the conveyance alienates *any* interest of a married person in a homestead" and both spouses do not sign the conveyance. The only exception relevant to this appeal would be the existence of a separate conveyance joining in the transaction and signed by the non-transferring spouse. The bankruptcy court held that it was irrelevant whether the residence was still Call's homestead; so long as it was McClearn's homestead, which it was, it fell within the terms of § 706.02(1)(f).

It appears, however, that the Wisconsin courts would not read the provision as literally as the bankruptcy court did. The case law is sparse but two cases shed some light on the way the state courts view the question. In Schapiro v. Security Savings & Loan Ass'n, 149 Wis. 2d 176, 441 N.W.2d 241 (Ct. App. 1989), S.A. Schapiro conveyed his and his wife Violetta's residence to his brother in 1976, without informing his wife or obtaining her consent. A few days later, Violetta Schapiro moved out of the house and filed for divorce. Sometime afterwards, S.A.'s brother conveyed the property to his sister, who managed the

10

property before later selling it. (S.A. gave his sister a quit claim deed to the property in 1977.) In 1986, Violetta filed suit against a number of persons: S.A.'s sister, the couple who had bought the property and the couple's mortgage lender, contending that S.A.'s conveyances to his brother and sister were void under § 706.02(1)(f). Both the state trial court and the court of appeals found Violetta's suit without merit, concluding that her consent had not been necessary to make the transfers valid. Her abandonment of the residence in 1976 meant that she no longer had a homestead interest in the property and deprived her of the protection of the statute. Schapiro, 149 Wis. 2d at 183, 441 N.W.2d at 244-45.

Jones v. Estate of Jones, 253 Wis. 2d 158, 646 N.W.2d 280 (2002), suggests that when the Wisconsin courts read § 706.02(1)(f), they give consideration to the potential detrimental effect on the non-transferring spouse. In Jones, the state supreme court upheld a conveyance of homestead property by one spouse alone because she and her husband had entered into a premarital agreement under which they waived their homestead protection. The court confirmed the purpose of the homestead protection in § 706.02(1)(f) as protecting the homestead and the family from unilateral action by one spouse to the detriment of the other, but added that "[w]here both spouses act affirmatively by entering into a premarital agreement, however, we are not faced with one spouse unilaterally acting to the detriment of the other. Rather, both spouses are acting together, in agreement, and making

collaborative decisions regarding their possession and conveyance of property." Id. at 170, 646 N.W.2d at 286.

Interpreting these two cases to try to determine how the state courts would rule on the construction of § 706.02(1)(f), leads to a conclusion that they would not read the statute as invalidating McClearn's mortgage. In Schapiro, the court read § 706.02(1)(f) as requiring the signatures of both spouses only when both have homestead interests. Where only one spouse has such an interest, only her signature is required. Jones supports this reading by not requiring the signature of a spouse who has executed a valid waiver of her homestead right, such as through a binding premarital agreement.

The Wisconsin courts' reading of the statute is a sensible one. It recognizes that there are occasions in which requiring the signature of a spouse who has abandoned a homestead could leave the remaining spouse powerless to sell or mortgage the property. Similarly, requiring the signature of a spouse who has waived her homestead rights through a binding premarital agreement would defeat the purpose and usefulness of such agreements. On the other hand, allowing the spouse with the only remaining homestead interest to be the sole signer on a conveyance would not undermine the protective purposes of the statute. Even under this proposed interpretation, anyone buying (or taking a mortgage) from only one spouse would have to assure itself that the transferor has true authority to convey his or her interest in the property. This is no different from what is required when the seller or

mortgagor holds herself out as being unmarried, divorced or widowed. In McClearn's situation, for example, appellee F&M obtained that assurance by way of the quit claim deed that Call executed at the same time as McClearn executed the mortgage papers.

Appellant trustee argues that Call may have abandoned his homestead interest and even quit claimed it away but that he could not have alienated his marital property interest in the homestead property until after the divorce court entered judgment on the marital settlement agreement. Even if appellant is correct in arguing that Call's marital property interest in the homestead has any bearing on the interpretation of Wis. Stat. §§ 706.02(1)(f) and 706.09(1)(e), which I consider unlikely, any impediments that Call's quit claim deed and abandonment of the property might have left lingering were eliminated when the court entered judgment on the agreement. This was long before McClearn filed her petition for bankruptcy.

I am persuaded that the mortgage McClearn executed was valid because she conveyed the entirety of the homestead interest (her own), that Call has no homestead claim he can assert against the property and therefore, no purchaser of McClearn's residence could acquire the property free from appellee F&M's properly recorded interest.

Alternatively, I am persuaded that if the mortgage conveyance would be found invalid, the bankruptcy judge was correct in holding that § 706.02(1)(f) and § 706.09(1)(e) should both be read as applying to "any interest of a married person in a homestead." It is

13

true, as appellee F&M asserts, that the state courts have not seen fit to read them that way at any time since they were enacted.  However, it is arguable from the paucity of law on this point that the state courts' failure to address the apparent discrepancy can be attributed to their never having had a reason to do so.  Neither party has cited any case taking up the question and my own research has revealed none.

As with the reading of § 706.02(1)(f), common sense supports the conclusion reached by the bankruptcy judge.  A harmonious reading of the two statutes, given the interrelationship between a statute setting out the requirements for valid transfers of homestead property and a "title curative" recording statute.  Thus, whenever one spouse or both conveys "any interest" in a homestead, the five-year period would govern the rights of bona fide purchasers:  for that time, any transferee takes pursuant to any adverse claim by an aggrieved spouse.  After that, the transferee takes free and clear of any improperly conveyed interest.

Under either approach, appellee trustee has no right to avoid the mortgage given by McClearn to appellee F&M.  I will not address appellant trustee's contentions that she has a right to avoid the mortgage under 11 U.S.C. § 544(A) and (2), because she has not explained how she could have stepped into the shoes of any creditor to obtain a judgment lien against the equity in McClearn's property.  She has suggested that Call was such a creditor but as of the day on which this case began, Call was not a creditor in relation to

McClearn, so far as the record reveals. Appellant says that he had a claim against McClearn for his marital property interests. If this is true, those interests would have been terminated by the court when it entered judgment in Call's and McClearn's divorce proceedings.

ORDER

IT IS ORDERED that the May 15, 2007 decision of the United States Bankruptcy Judge awarding judgment to appellee Farmers & Merchants State Bank is AFFIRMED.

Entered this 10th day of December, 2007.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge